# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Edward S. Kiel, U.S.M.J. |
| v. | : | Mag. No. 21-15476 |
| EBONY RUSSELL | : | CRIMINAL COMPLAINT |

I, Paul Kim, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## SEE ATTACHMENT A

I further state that I am a Special Agent with the United States Postal Service, Office of Inspector General, and that this complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

Paul Kim, Special Agent
United States Postal Service
Office of Inspector General

*Special Agent Kim attested to this complaint by telephone pursuant to FRCP 4.1(b)(2)(A).

Sworn and subscribed to by telephone on
November __4__, 2021

HONORABLE EDWARD S. KIEL
UNITED STATES MAGISTRATE JUDGE

Edward Kiel
Signature of Judicial Officer

## ATTACHMENT A
### (Embezzlement)

From at least as early as in or about December 2016 through in or about July 2018, in the District of New Jersey and elsewhere, defendant

**EBONY RUSSELL**

being a Postal Service employee, did convert to her own use, without authority, money and property that came into her hands and under her control in any manner, that is approximately $10,459, in the execution and under color of her office, employment, and service.

In violation of Title 18, United States Code, Section 1711 and Section 2.

## ATTACHMENT B

I, Paul Kim, a Special Agent with the United States Postal Service, Office of Inspector General, have knowledge of the following facts based upon both my investigation, a review of reports, and discussions with other law enforcement personnel and others. Because this Complaint is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause. Unless specifically indicated, all conversations and statements described below are related in substance and in part. Where I assert that an event took place on a particular date, I am asserting that it took place in or on or about the dates alleged.

**Background/Relevant Individuals**

1. At all relevant times:

    A. Ebony Russell ("RUSSELL") was a Sales and Service Distribution Associate, otherwise known as a window clerk, employed by the United States Postal Service ("USPS"), at the Wayne-Sheffield Post Office, located at 150 Pompton Plains Crossroad in Wayne, New Jersey (the "Wayne Post Office"). RUSSELL worked at the passport counter, where she processed U.S. passport applications and routinely generated postal money orders and accepted payment for fees to be transmitted to the U.S. State Department (the "State Department") in conjunction with those applications. She was also responsible for, among other things, retail window transactions, such as selling, and providing refunds for, stamps, money orders and other postal supplies.

    B. A Transaction Tender Report ("TTR") was a report generated by USPS that included information for each transaction conducted by a postal window clerk at a specific time. This information included the start and end time of the transaction, as well as, among other things, the type of transaction, *i.e.*, purchase or refund, the product purchased, the tender type, and the total tender. The TTR also captured whether a purchase had been voided.

**The Embezzlement Scheme**

2. RUSSELL stole USPS money orders purchased by customers submitting U.S. passport applications for transmittal by the USPS directly to the State Department for processing, as well as replacement money orders and cash in equivalent amounts to the money orders purchased by those customers. She would set aside the victim customers' passport applications and not process them further. In some cases, customers complained about their undelivered passport applications to RUSSELL, who then communicated directly with the customers and belatedly sent the undelivered passport applications to the State Department, fraudulently using another customer's money order as payment. RUSSELL employed various methods to embezzle postal funds, as set forth below.

i. **Money Orders Voided at Time of Transaction**

3. When a customer purchased a money order directly from RUSSELL to pay passport application fees, RUSSELL processed the transaction at her retail terminal and generated an actual money order and receipt printed with the money order's serial number and value. The customer was thus led to believe that a valid money order together with the customer's passport application would be transmitted by mail to the State Department. However, RUSSELL then manipulated the transaction at her retail terminal in order to generate a money order or cash refund for herself. After generating the actual money order purchased by the customer, RUSSELL voided the transaction at her retail terminal, rendering the customer's money order worthless. RUSSELL then generated a second, sequentially numbered money order or a cash refund for the amount of the transaction, which she pocketed for herself. For example:

a. On or about May 30, 2018, Customer 1 purchased a money order for $110 from a postal worker matching RUSSELL's physical description to pay a passport application fee. According to the TTR for RUSSELL's assigned clerk number, RUSSELL generated a money order for Customer 1. After the money order printed, the system prompted RUSSELL to confirm whether the money order had printed correctly, and RUSSELL indicated that it had not. The system then voided the money order and prompted RUSSELL to print the next sequentially numbered money order. RUSSELL printed a second money order for $110 as part of the same transaction, which took place between approximately 11:12 a.m. and 11:15 a.m. The Wayne Post Office's Daily Financial Report further contained a record indicating that RUSSELL generated, voided, and then reprinted Customer 1's $110 money order. In or about July 2018, Customer 1 called the Post Office to inquire about the status of her passport application and learned that it had not been successfully transmitted to the State Department and that Customer 1 would need to resubmit the passport application. RUSSELL ultimately made the second money order she had generated payable to the State Department and in the memo line wrote the name of another customer, Customer 2. Based on the investigation to date, RUSSELL likely paid Customer 2's passport application fee using the second money order because she had earlier embezzled Customer 2's original passport payment and then received a complaint from Customer 2 when Customer 2's passport application was not processed by the State Department.

b. On or about June 8, 2018, Customer 3 purchased a money order for $110 at the Wayne Post Office to pay a passport application fee. According to the TTR, between approximately between 9:16 a.m. and 9:20 a.m., RUSSELL generated Customer 3's money order, voided it, and processed a second money order for the same amount as part of the same transaction. Corresponding video surveillance of RUSSELL's retail terminal for that time period showed RUSSELL processing the transaction for the first money order while Customer 3 was present at the counter, and then processing the second money order after Customer 3 departed. RUSSELL made the second money order payable to the State Department and in the memo line wrote the name of another customer, Customer 4. Based on the investigation to date, RUSSELL likely paid Customer 4's passport application fee using the second money order because she had embezzled Customer 4's original payment and then received a complaint from Customer 4 when Customer 4's passport application was not processed by the State Department.

### ii. Money Orders Voided in Subsequent Transactions

4. RUSSELL also voided customers' money orders after the customers had left the Wayne Post Office in separate transactions executed by her at her retail terminal. As before, RUSSELL processed a customer's transaction at her retail terminal in the presence of the customer and generated an actual money order and receipt printed with the money order's serial number and value, leading the customer to believe that a valid money order would be transmitted by mail with the customer's passport application to the State Department. Later, typically when the Wayne Post Office was closing and RUSSELL was not observed, RUSSELL accessed the passport transactions from earlier in the day and used her retail terminal to void the associated money orders. She then pocketed cash from her retail terminal, equivalent in value to the total amount of the money orders she had voided to avoid detection. For example:

a. On or about June 8, 2018, at approximately 4:17 p.m., RUSSELL was observed on video surveillance processing a passport-fee transaction for a customer. RUSSELL accepted a passport application and cash from the customer. RUSSELL placed the cash in her desk drawer, as opposed to the cash drawer in her retail terminal, and provided the customer with change, before printing a money order at her retail terminal. After writing something on the money order, RUSSELL tore the customer's receipt from the money order and provided it to the customer before placing the money order and passport application in a Priority Mail envelope. RUSSELL then printed a second money order at her retail terminal, folded it in half, and placed it underneath her retail terminal in a desk drawer. According to the TTR, the customer had purchased a money order for $110, which RUSSELL subsequently voided. RUSSELL then generated a second money order, which she voided in order to collect cash in an equivalent amount. Video surveillance from the end of the business day, at approximately 5:28 p.m., showed RUSSELL performing a count of the cash in her retail terminal. After making various piles of cash, including one pile that she removed from inside her desk drawer and placed on top of the counter next to her retail terminal, RUSSELL was observed on video at approximately 5:37 p.m. collecting the pile of cash next to her retail terminal and walking off camera. When she reappeared on the video approximately one minute later, she no longer had the cash in hand. The investigation revealed that RUSSELL had a locker in the back of the Wayne Post Office.

b. On or about June 11, 2018, Customer 5 purchased a money order for $140 to pay a passport application fee. According to the TTR, RUSSELL generated a money order for Customer 5 between approximately 10:54 a.m. and approximately 10:59 a.m. RUSSELL provided Customer 5 with a receipt printed with the money order's serial number and $140 value. At approximately 4:43 p.m., RUSSELL used her retail terminal to void Customer 5's money order and its associated money order fee of $1.20. Corresponding video surveillance of RUSSELL's retail terminal showed RUSSELL processing the money order transaction while Customer 5 was present at the counter and later, when alone, voiding that same money order. Based on the investigation to date, including postal records which do not indicate any irregularity in the cash total contained in RUSSELL's retail terminal, at some point between the time that she voided Customer 5's money order and the end of the business day, RUSSELL pocketed cash from her retail terminal equivalent to the amount of Customer 5's voided transaction.

c. On or about June 15, 2018, Customer 6 purchased a money order for $200 to pay a passport application fee. According to the TTR, RUSSELL generated a money order for Customer 6 between approximately 10:34 a.m. and approximately 10:39 a.m. RUSSELL provided Customer 6 with a receipt printed with the money order's serial number and $200 value. On or about the same date, Customer 7 purchased a money order for $110 to pay a passport application fee. According to the TTR, RUSSELL generated a money order for Customer 7 between approximately 2:00 p.m. and approximately 2:06 p.m. At approximately 4:39 p.m., RUSSELL used her retail terminal to void the money orders purchased by Customer 6 and Customer 7, as well as their associated money order fees of $1.20. Corresponding video surveillance of RUSSELL's retail terminal showed RUSSELL processing the money order transactions while Customer 6 and Customer 7 were present at the counter and later, when alone, voiding those same money orders. Based on the investigation to date, including postal records which do not indicate any irregularity in the cash total contained in RUSSELL's retail terminal, at some point between the time she voided Customer 6's money order and Customer 7's money order and the end of the business day, RUSSELL pocketed cash from her retail terminal equivalent to the amount of the voided transactions.

### iii. Money Orders Processed by Other Postal Clerks

5. RUSSELL also had her colleagues at the Wayne Post Office generate money orders for passport customers, but then later embezzled the funds using various means. For these transactions, RUSSELL would take the customer's payment to another window clerk and ask them to generate the money order at their window terminal, before returning to the customer with the money order receipt, leading the customer to believe that a valid money order would be transmitted by mail with the customer's passport application to the State Department. However, she did not send in those customers' money orders or passport applications; instead, she used those customers' money orders to pay for other customers' passport applications or negotiated the money orders for cash, either at the Wayne Post Office or at a check cashing establishment. For example:

a. On or about April 9, 2018, Customer 8 purchased a money order for $110 to pay a passport application fee. Customer 8's receipt from the money order indicates that the money order was processed by a window clerk at the Wayne Post Office other than RUSSELL at approximately 1:50 p.m. According to the TTR, RUSSELL later negotiated the same money order at approximately 4:38 p.m. An image of Customer 8's negotiated money order, which had been made payable to the State Department, reflects that it was deposited at the bank utilized by USPS for remittance deposits, indicating that RUSSELL negotiated the money order for cash from her retail terminal.

b. On or about April 28, 2018, Customer 9 purchased three money orders to pay three passport applications fees: one for $110 and two for $80 each. The money orders were processed not by RUSSELL, but by another window clerk at the Wayne Post Office at approximately 11:43 a.m. However, according to the TTR, RUSSELL processed the $35 passport fees associated with each of Customer 9's passport applications at her own retail terminal between approximately 11:28 a.m. and approximately 11:37 a.m. Ultimately, RUSSELL made out two of the money orders purchased by Customer 9, one for $110 and one

for $80, to herself and negotiated them on or about May 1, 2018 at a check cashing establishment located in Hillside, New Jersey. An image of RUSSELL was captured on the check cashing establishment's surveillance system while she was at the window negotiating Customer 9's stolen money orders. RUSSELL made the third money order for $80 payable to the State Department and in the memo line wrote the name of another customer, Customer 10. Based on the investigation to date, RUSSELL likely paid Customer 10's passport application fee using the third money order because she had embezzled Customer 10's original payment and then received a complaint from Customer 10 when Customer 10's passport application was not processed by the State Department.

      iv.    **RUSSELL's Communications with Victim Customers**

      6.    Customers whose money order payments had been embezzled by RUSSELL, and whose passport applications were never transmitted by RUSSELL to the State Department, sometimes returned to RUSSELL at the Wayne Post Office to inquire about the status of their applications or to complain. RUSSELL sometimes communicated directly with these customers regarding their applications, and also belatedly transmitted customers' applications to the State Department using other customers' purchased money orders. For example:

      a.    On or about May 30, 2018, at approximately 1:30 p.m., Customer 11 and Customer 12 submitted passport applications at the passport counter of the Wayne Post Office to a window clerk matching RUSSELL's physical description named "Ebony," from whom they purchased two $116 money orders to pay the passport fees. Both Customer 11 and Customer 12 observed RUSSELL write on their money orders but were not provided with customer receipts from the money orders. When they did not receive their passports, on or about July 1, 2018, Customers 11 and 12 called the State Department and spoke with a customer service representative who was unable to locate their applications and advised them to return to the Wayne Post Office to make further inquiries. On or about July 3, 2018, a relative of Customer 11 ("Individual 1") called the Wayne Post Office to ask about the applications and was informed by a male employee that there was no record of the applications but advised Individual 1 to call back on or about July 5, 2018, when the passport clerk would be at work. Individual 1 called back as directed and spoke with RUSSELL, who advised that she would search for the applications and provided Individual 1 with her personal cell phone number for future communications. At approximately 9:00 p.m. on or about July 5, 2018, RUSSELL called Individual 1 to report that the applications had been lost in transit but that she would retrieve them and mail them again to the State Department. RUSSELL represented that this had happened with other applications as well and she had taken the same steps for those applications, and she would call Individual 1 with the tracking number once the applications had been resent. When RUSSELL did not call, Individual 1 texted RUSSELL and exchanged text messages with RUSSELL regarding the status of the passport applications between on or about July 18, 2018 and on or about July 26, 2018. Ultimately, on or about July 26, 2018, RUSSELL went to Individual 1's personal residence and dropped off $300 cash along with passport application paperwork, including Customer 11's birth certificate and Customer 12's expired passport, which had been provided to RUSSELL for transmission to the State Department.

    b. On or about June 19, 2018, at approximately 3:05 p.m., Customer 13 submitted four passport applications to RUSSELL at the Wayne Post Office and purchased four money orders to pay the passport fees: two for $110 and two for $80. Customer 13 was not provided with customer receipts from the money orders but was provided with a transaction receipt printed from RUSSELL's retail terminal. RUSSELL made each of Customer 13's money orders payable to the State Department and in the memo lines wrote the names of other customers: RUSSELL made one $110 money order and one $80 money order payable in the name of Customer 14; one $110 money order in the name of Customer 15; and one $80 money order in the name of Customer 16. Based on the investigation to date, RUSSELL likely paid the State Department for Customers 14, 15, and 16 using Customer 13's money orders because she had embezzled those customers' original payments and then received a complaints when those customers did not receive their passports. When Customer 13 did not receive passports from the State Department, Customer 13 returned to the Wayne Post Office, where Customer 13 observed another customer complaining to RUSSELL about a missing passport. Customer 13 spoke to RUSSELL, who provided Customer 13 with her personal cell phone number for future communications. RUSSELL subsequently called Customer 13 on or about July 9, 2018 at approximately 8:56 p.m. Customer 13 called RUSSELL several times, placing the last call to RUSSELL on July 17, 2018, without receiving any response from RUSSELL.

    7. Based on my training and experience and the evidence collected during the course of the investigation, including what has been set forth in the previous paragraphs, there is probable cause to believe that the money orders voided by RUSSELL between in or about June 2016 through in or about July 2018, totaling approximately $10,459, were fraudulently voided and the value of those money orders embezzled by RUSSELL. In addition, the Wayne Post Office incurred approximately $13,013 in additional losses for reimbursing victim customers and mailing replacement passport applications to the State Department for those customers.